UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

AUDREY A. LLOYD,

                          Plaintiff,

      v.                                        **DECISION AND ORDER**
                                                      12-CV-122S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

      1.      Plaintiff, Audrey Lloyd, challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act"). Lloyd alleges that she has been disabled since May 30, 2008. She alleges that depression, pain in her hands and feet, and pain resulting from lupus render her unable to work. She therefore asserts that she is entitled to benefits under the Act.

      2.      Lloyd filed an application for disability and supplemental security benefits under Title II of the Act on January 7, 2009. The Commissioner of Social Security ("Commissioner") denied her application, and as result, she requested an administrative hearing. She received that hearing before ALJ Stanley A. Moskal Jr. on October 29, 2010. The ALJ considered the case *de novo*, and on November 18, 2010, he issued a decision denying Lloyd's application for benefits. Lloyd filed a request for review with the Appeals Council, but the Council denied that request, prompting her to file the current civil action on February 10, 2012, challenging Defendant's final decision.[1]

      3.      On July 19, 2012, the Commissioner and Lloyd both filed motions for

---

[1] The ALJ's November 18, 2010 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

1

judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Briefing on the motions concluded August 20, 2012, at which time this Court took the motions under advisement without oral argument. For the reasons set forth below, the Commissioner's motion is granted and Lloyd's motion is denied.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference,

and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520. The claimant has the burden of proof as to the first four steps, but the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).

8. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Lloyd has not engaged in substantial gainful activity since her alleged onset date (R. 19);[2] (2) Lloyd suffers from three severe impairments, including lupus, depression, and obesity (id.); (3) Lloyd does not have an impairment or combination of impairments that meets or medically equals the criteria necessary for finding a disabling impairment under the regulations (id.); (4) Lloyd has past relevant work as a hotel housekeeper, and (5) she retains the residual functional capacity ("RFC") to perform this work, or any "light work," so long as she avoids concentrated exposure to extreme heat and cold. (R. 20-22.) Ultimately, the ALJ concluded that Lloyd was not under a disability as defined by the Act from her onset date through the date of the decision. (R. 23.)

9. Lloyd raises three challenges to the ALJ's decision: First, she argues that the RFC was not supported by substantial evidence. Second, she argues that the ALJ did not properly assess her credibility. Last, she concludes by arguing that she is not able to perform the work of a housekeeper.

10. In support of her argument that the ALJ's RFC assessment was erroneous, Lloyd principally relies on a single document prepared by Dr. Rajwinder Dhillon, which was not submitted to the ALJ, but was submitted to the Appeals Council after the ALJ's decision. (R. 381-383.) In this document, Dr. Dhillon indicates (by circling the appropriate selection) that Lloyd is not able to work. He also indicates that Lloyd can lift ten pounds "occasionally" and five pounds "frequently"; that she can never engage in "fine manipulation"; and that she can "occasionally" perform other functions, such as bend, stoop, and raise her arms over her shoulder. Lloyd argues that this treating-source opinion

---

[2]Citations to the underlying administrative record are designated "R."

4

should be given controlling weight and that, therefore, the ALJ's conclusion that she has the RFC to perform her past work should be reversed.

11. This Court cannot agree. As an initial matter, for Dr. Dhillon's submission, which was not submitted to the ALJ, to be properly considered on judicial review it must relate to the period "on or before the ALJ's decision." Perez v. Chater, 77 F.3d 41 (2d Cir.1996) (noting that the Social Security Administration Regulations instruct that additional evidence will be considered but the evidence must be "new and material . . . and relate to the period on or before the ALJ's decision.") Here, Dr. Dhillon's submission is dated March 16, 2011, nearly four months after the ALJ's decision. Neither Dr. Dhillon, nor Lloyd in her papers before this Court, suggest that this finding relates to the applicable period.

12. But even assuming, *arguendo*, that Lloyd can surpass this hurdle and that Dr. Dhillon's submission should be considered, this Court is satisfied that the ALJ's decision would remain supported by substantial evidence. Dr. Dhillon's conclusion would only be given controlling weight if it were "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). Further, a finding by a medical source that a claimant is "disabled" or "unable to work" does not mean that the Commissioner must determine that the claimant is disabled within the meaning of the Act. See 20 C.F.R. § 404.1527(e); see also Green-Younger, 335 F.3d at 106 ("A treating physician's statement that the claimant is disabled cannot itself be determinative") (internal citation and quotation marks omitted). Here, Dr. Dhillon's summary findings do not point to any tests or objective measurements on which his conclusions are based; and, what is

more, his conclusions are inconsistent with the remainder of the record. Treatment notes, for example, which were reviewed by the ALJ, demonstrate that Lloyd does indeed suffer from lupus with its attendant skin rashes, but there is little indication of any functional limitation. Consultive examiner Dr. Kathleen Kelley found no limitations other than the need to take breaks after prolonged periods on her feet and after using her hands frequently. Lloyd also had few limitations in daily living: she was able to cook twice a week, clean, do the laundry, and shop. (R. 281.) Finally, she left her job as housekeeper not because she should not perform it, but because the company downsized.

Even the other evidence that was submitted only to the Appeals Council is not consistent with Dr. Dhillon's finding. As noted by the Commissioner, the late-submitted reports from University at Buffalo Family Medicine, Erie County Medical Center, and Jefferson Family Medicine show few physical limitations. Consequently, Lloyd's motion on this ground is denied.

13. Lloyd, however, raises two other challenges to the ALJ's RFC assessment. She argues that the ALJ erred by failing to: (1) perform a "function-by-function" analysis and (2) include mental limitations in her RFC.

14. Social Security Regulation 96-8P provides that "[e]xertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling." The regulation further provides that "[e]ach function must be considered separately." Id.

There is no dispute that the ALJ did not conduct an explicit function-by-function assessment in his decision. But that is not, *ipso facto*, cause for remand. See, e.g., Drennen v. Astrue, No. 10-CV-6007MAT, 2012 WL 42496, at *5-*6 (W.D.N.Y. Jan. 9,

2012) (applying harmless error analysis); <u>Sanderson v. Astrue</u>, No. 08–CV–1177 (GTS/VEB), 2011 WL 1113856, at *5 (N.D.N.Y. 2011). This Court is satisfied that the ALJ properly considered each of these separate functions in making his determination. Indeed, aside from Lloyd's own complaints, the record contains no indication that Lloyd was significantly disabled in any of these areas. Any error for failing to specifically address each the functions was therefore harmless.

15. Lloyd's final argument regarding the RFC is that the ALJ did not properly consider her mental limitations. This is not so. The ALJ took her mental functioning into consideration. He referenced Dr. Renee Baskin's psychiatric evaluation and noted that Lloyd's cognitive functioning was "below average to borderline." (R. 21.) This is the very examination that Lloyd relies on in arguing that the ALJ erred. Lloyd faults the ALJ for concluding "without rationale" that these limitations are consistent with her RFC. (Pl.'s Br. at 17; Docket No. 9-1.) But she concludes by stating simply, without rationale herself, that they are *in*consistent with her RFC. In any event, this Court finds no error in the ALJ's assessment that Lloyd's cognitive limitations do not preclude her from performing her past relevant work. Indeed, Dr. Baskin found that she had "minimal to no limitations" in, *inter alia*, following and understanding directions, performing simple tasks, and maintaining attention. (<u>See</u> R. 21; 278.)

16. Lloyd next challenges the ALJ's assessment of her credibility. When considering a plaintiff's symptoms, the ALJ must follow a two-step process. First, he must determine if there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the plaintiff's pain or other symptoms. SSR 96-7p. Second, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which they limit the plaintiff's functioning. <u>Id.</u> In

making that evaluation, an ALJ must assess a plaintiff's credibility when such statements cannot be verified by objective medical evidence. Id.

The ALJ alone decides issues of credibility and this Court must give great deference to those decisions, as the ALJ was able to observe the witness's testimony and demeanor at the hearing. Gernavage v. Shalala, 882 F. Supp. 1413, 1419 n.6 (S.D.N.Y. 1995); Serra v. Sullivan, 762 F. Supp. 1030, 1034 (W.D.N.Y. 1991).

17. ALJ Moskal found that Lloyd's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning intensity, persistence, and limiting effects of these symptoms are not credible. (R. 22.) This Court finds no error in that assessment. Lloyd contends that the ALJ did not properly recite the facts in making his credibility assessment. She notes that the ALJ found that she "socializes," when she actually testified that she spends her days lying down. Lloyd did testify that she lies down "all day." (R. 38–39.) But Dr. Kelly's report indicates that Lloyd "watches TV, listens to the radio, reads, and socializes with friends." (R. 281.) If anything, these contrasting reports vitiate her credibility. Considering this, and the evidence on record, this Court finds no reversible error in the ALJ's assessment that Lloyd was not entirely credible in her reports of pain and capacity for work.

18. Finally, Lloyd argues that the ALJ erred by finding her capable of performing past work as a housekeeper. Although the ALJ did not consult a vocational expert, he did inquire into the tasks that Lloyd was required to perform as a housekeeper. Lloyd testified that it required her to be on her feet and to lift, at most, 20 pounds. Nothing in the record establishes that she would be unable to perform these tasks. Lloyd, in fact, did perform these tasks before her employer downsized her. Once again, Lloyd is forced to rely on the newly submitted document from Dr. Dhillon. But, as already noted, this document would

8

not have changed the ALJ's analysis. As such, ALJ Moskal's finding that she could perform this work was not in error.

19. The ALJ committed no reversible error and his findings are based on substantial evidence. This Court will therefore grant Defendant's motion for judgment on the pleadings, and deny Plaintiff's motion for the same relief.

****

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 7) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED.

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated: February 23, 2013
       Buffalo, New York

                                    /s/William M. Skretny
                                    WILLIAM M. SKRETNY
                                          Chief Judge
                                  United States District Court